IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ILLINOIS DUNESLAND PRESERVATION )
SOCIETY, an Illinois not for )
profit corporation, )
)
)
Plaintiff, )
) Case No. 06-C-2880
)
v. )
)
THE ILLINOIS DEPARTMENT OF )
NATURAL RESOURCES, et al. )
)
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants have brought a motion to dismiss the complaint brought by plaintiff, the Illinois Dunesland Preservation Society ("Dunesland"). Dunesland's complaint alleges that defendant Illinois Department of Natural Resources ("IDNR") and the other named defendants[1] have refused to allow Dunesland to display a pamphlet at the Illinois Beach State Park (the "Park"), a facility owned by the State of Illinois and managed by the IDNR, despite the fact that the defendants display informational pamphlets for other entities. Dunesland's pamphlet is a two-page brochure discussing how to avoid asbestos exposure at the Park. The complaint contends

---

[1] Dunesland's complaint names six IDNR agents as defendants (the "individual IDNR defendants") and two agents of the Illinois Department of Public Health (the "individual IDPH defendants"), all of whom are sued in their individual and official capacities. The individual IDNR defendants are Jonathan Furr, Stan Yonkauski, Tim Hickman, Beverly Ascaridis, Tony Mayville, and Joe Bauer. The individual IDPH defendants are Tom Schafer and Jennifer Davis.

that the Park has areas "where other informational and cautionary flyers and brochures were displayed, including the Park's office, the Park's nearby Nature Preserve, and the Park lodge, which is run by a concessionaire." It further contends that, at the time Dunesland requested its pamphlet be displayed at the Park, the Park had "pamphlets advertising a shopping center and an amusement park" and "warnings from State and local health departments about E. coli and West Nile Virus." Finally, it alleges that "[t]he entities which provided the pamphlets displayed at the Park were not required to obtain any type of permit from IDNR to display or distribute the pamphlets."

Dunesland claims that it submitted its flyer to the superintendent of the Park for the IDNR's approval. It alleges that the superintendent faxed a copy of the report to individual defendants Furr, Hickman, Ascaridis, and Mayville, and asked for their advice. The complaint states that the "individual defendants, acting in concert, determined to prohibit [Dunesland] from displaying the flyer at the Park. . . and instructed [the superintendent] to inform Dunesland that IDNR had denied the request to display the flyer because of its content." Subsequently, the superintendent sent Dunesland a letter denying its request and stating that the "IDNR does not feel the flyer initiated by [Dunesland] contains appropriate content."

2

Dunesland's complaint seeks (1) a declaration that the defendants' actions violated Dunesland's First and Fourteenth Amendment rights (Count I); (2) an injunction prohibiting defendants from preventing Dunesland from displaying, distributing, and disseminating its flyer at the park (Counts II and III); and (3) damages under 42 U.S.C. § 1983 for violations of Dunesland's constitutional right to freedom of speech and equal protection (Count IV). Defendants have brought a motion under FED. R. CIV. P. 12(b)(6) to dismiss Dunesland's complaint in its entirety . Their motion contends that Dunesland (1) has no First Amendment right to force defendants to display its pamphlet at the Park ; (2) may not bring a § 1983 claim against the IDNR; and (3) has not sufficiently alleged involvement by certain individual defendants in the purported violation of Dunesland's rights. For the following reasons, I grant defendants' motion in part and deny it in part.

I.

In assessing defendants' motion to dismiss, I must accept all well-pled facts in Dunesland's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to Dunesland. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of its claims is proper only if Dunesland can prove no set of facts to support them. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

My review is limited to the pleadings on file, so I must exclude from my analysis any factual assertions either party made in their papers related to the motion to dismiss. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). However, written instruments attached to the complaint are considered to be part of the complaint. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005).

## II.

I first address the defendants' contention that Dunesland has not stated a First Amendment claim. Taking the well-pled facts in Dunesland's complaint as true, Dunesland has stated such a claim.

There is no dispute between the parties that Dunesland's pamphlet is a form of speech protected by the First Amendment. However, the government does not have an obligation to open up all of its property to those wishing to use it to engage in speech. *See Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 800 (1985). Instead, "the extent to which the Government can control access depends on the nature of the relevant forum." *Id.* In Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37 (1983), the Supreme Court identified three types of fora: traditional public fora such as streets and parks, where speech has the highest level of protection; designated public fora in which the government, if it chooses to allow speech, is bound by the same standards that apply to traditional public fora; and nonpublic fora

4

that the government may reserve "for [their] intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Id. at 45-47 (internal citations omitted).

While this forum analysis normally applies to First Amendment cases such as plaintiff's, defendants contend that it should not apply here.[2] The Supreme Court has held that traditional forum analysis does not apply in limited circumstances in which the government's limitation on the access of a private speaker to a public forum is necessary to effectuate a particular governmental mandate. See United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 205, 206-08 (2003) (allowing federal government to condition receipt of federal funding on library's agreement to limit internet access to certain types of materials; such limitations are not subject to forum analysis because a library must exercise judgment in making collection decisions in order to "identif[y] suitable and worthwhile material"); Arkansas Educ. Television Comm'n v. Forbes,

---

[2]Defendants distinguish their interpretation of plaintiff's argument, that the IDNR should be required to make plaintiff's pamphlet available to the public at its display locations in the Park, from an argument that plaintiff should be allowed to use the Park to engage in speech by passing out the pamphlet to the public or having a demonstration in support of the ideas expressed in the pamphlet. Defendants concede that the Park is some type of public forum and that, if plaintiff itself wished to distribute the pamphlet at the Park, forum analysis would apply to determine what restrictions defendants could impose on plaintiff to do so.

523 U.S. 666, 672-73 (1998) (allowing public television station to exclude certain political candidates from a televised debate because stations must exercise discretion in order to "fulfill their journalistic purpose and statutory obligations"); *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 586 (1998) (allowing art funding program to judge applications on artistic merit because program has a mandate to "make esthetic judgments" about what art it will fund); *see also First Defense Legal Aid v. City of Chicago*, 319 F.3d 967, 972 (7th Cir. 2003) (citing *Cornelius*, 473 U.S. at 788) (noting that "[p]ublic buildings and proceedings may be devoted to those chosen to carry out public purposes" in holding that a police department does not violate the First Amendment rights of attorneys by not informing suspects in police custody that the attorney had arrived to represent them).

Here, however, taking the facts as alleged in plaintiff's complaint as true, it is not clear that traditional forum analysis should not apply. Dunesland's complaint contends that defendants refused to display its pamphlet even though the Park displayed pamphlets from other entities, including a shopping center, an amusement park, and state and local health departments. It alleges that these entities were not required to obtain a permit to display their pamphlets. From the complaint, it is not clear what the IDNR's purpose is in displaying these pamphlets, whether the IDNR solicited these pamphlets or merely allowed individual

6

organizations to place the pamphlets at the Park, and how these pamphlets are actually displayed.³ For this reason, I cannot conclude at this stage of the case that the Park, or the areas of the Park in which pamphlets are displayed, are not subject to the public forum analysis.⁴

Defendants argue in the alternative that if the areas of the Park displaying pamphlets are subject to forum analysis, these areas are non-public fora that the government may reserve "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress

---

³The defendants' motion to dismiss discusses plaintiff's complaint as though it alleges that defendants refused to place plaintiff's pamphlet on pamphlet racks at the Park under the defendants' control. However, plaintiff's complaint makes no mention of pamphlet racks in particular, but merely alleges that the Park displays pamphlets from other entities.

⁴For the same reason, I cannot conclude at the motion to dismiss stage that the pamphlets displayed at the Park are a type of government speech, as defendants contend. The government may "regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." *Rosenberger v. Rector and Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995) (overturning university policy refusing to fund student groups that manifest a belief "in or about a deity or an ultimate reality"); *see also Rust v. Sullivan*, 500 U.S. 173 (1991) (holding government may condition receipt of federal funding for family planning services on an organization's agreement not to give abortion-related advice). From plaintiff's complaint it is not clear who authored the pamphlets displayed at the Park, whether defendants selected certain pamphlets to display or whether they allowed certain groups to display their pamphlets at the park, whether those groups requested to display their pamphlets or the government sought them out, or for what purpose those pamphlets were chosen or allowed. It is therefore not clear whether the pamphlets the IDNR displayed qualify as "government speech."

7

expression merely because public officials oppose the speaker's view."[5] Perry, 460 U.S. at 46. Taking the well-pled facts in the complaint as true, it is not clear here what the "purpose" of the areas in the Park displaying the pamphlets were. If the purpose was to allow certain entities to display their messages relevant to the Park (such as advertising nearby attractions), refusing to allow plaintiff to display its message relevant to the Park might be unreasonable or impermissible viewpoint discrimination. In addition, plaintiff has specifically alleged that the IDNR said that it would not display Dunesland's pamphlet because the pamphlet did not contain "appropriate content," and in an internal meeting the individual defendants instructed the Park superintendent to reject plaintiff's pamphlet because of its content. While this language is subject to interpretation, one possible interpretation is that the IDNR suppressed plaintiff's expression because it opposed Dunesland's views on pollution at the Park.

For these reasons, defendants' arguments that plaintiff has not stated a First Amendment claim are without merit, and I deny their motion to dismiss plaintiff's First Amendment-related claims.

---

[5]Taking the well-pled facts in plaintiff's complaint as true, however, it is possible that the areas of the Park displaying pamphlets are at least a designated public forum; if the IDNR allowed certain groups to place their materials in those areas without obtaining a permit, as plaintiff contends, and depending on the IDNR's purpose in establishing those areas, a court could find that the stricter rules governing designed public fora should apply to determine what speech the defendants could restrict in those areas.

8

III.

Defendants also contend that Dunesland's request for relief under 42 U.S.C. § 1983 (2006) against the IDNR and the individual defendants in their official capacities is barred because, as a state agency protected by Eleventh Amendment sovereign immunity, the IDNR is not a "person" who can deprive a party of its rights, privileges or immunities under § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66 (1989). The same is true for claims brought against the individual defendants sued in their official capacities. *See id.* at 71.

As Dunesland points out, claims may be brought under § 1983 against state employees in their individual capacities, even for actions taken in their official capacities. *See Hafer v. Melo*, 502 U.S. 21, 26-27 (1991). And, Dunesland's claims for injunctive relief under § 1983 against the individual defendants in their official capacities survive because "official capacity actions for injunctive relief are not treated as actions against the State."[6] *Id.* at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159-160 (1908)). I agree with defendants, however, that there is no support for the proposition that claims for injunctive relief may be brought under

---

[6]Plaintiff has not brought its claims for injunctive relief against the individual defendants in their individual capacities; such claims would be barred had plaintiff brought them. *See Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005).

9

§ 1983 against state agencies. In *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635 (2002), the only case Dunesland cites in support of its right to sue the IDNR for injunctive relief, the Supreme Court specifically stated that it need not decide whether the Public Service Commission of Maryland was subject to suit for injunctive relief because the plaintiff could bring a suit against the commissioners in their official capacity. *Id.* at 645. The same is true in this case; although there is no basis to bring suit against the IDNR itself, this is of no consequence to Dunesland because claims against the individual state officials in their official capacity are essentially claims against the IDNR itself. *See Will*, 491 U.S. at 71.

Defendants' motion to dismiss does not specifically argue that plaintiff's declaratory judgment claim against the IDNR or the individual defendants in their official capacities is inappropriate, but the same principles of sovereign immunity also apply to bar that claim. In *Green v. Monsour*, 474 U.S. 64 (1985), the Supreme Court held that plaintiffs may not bring declaratory judgment actions establishing the past liability of a state or state agency. *Id.* at 65-66. Similarly, in *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775 (7th Cir. 1991), the Seventh Circuit held that the plaintiff could not seek a declaratory judgment against the board of regents because the only purpose of such a judgment would be "as a step toward a state

damage or injunctive remedy" that would operate as an "end-run" around the Eleventh Amendment. See id. at 778.

I therefore grant defendants' motion to dismiss the IDNR from this suit, and dismiss those claims for damages and declaratory judgment against the individual defendants in their official capacities.

IV.

Defendants also contend that certain individual defendants should be dismissed from this lawsuit because Dunesland has not alleged that they were personally involved in any purported deprivation of its rights. To state a claim for a violation of § 1983, a plaintiff must show that each defendant caused or participated in the alleged constitutional deprivation. See *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997) (internal citations omitted). Here, Dunesland has generally alleged that the "individual defendants, acting in concert, determined to prohibit [Dunesland] from displaying the flyer at the Park . . . and instructed [the superintendent] to inform Dunesland that IDNR had denied the request to display the flyer because of its content." The complaint does specifically allege that certain defendants took other specific actions (i.e., that Furr, Hickman, Ascaridis and Mayville received a copy of Dunesland's flyer, and that Hickman asked the superintendent for his recommendation on the flyer), but does not allege further specific actions by the other individual

defendants. However, the requirements of federal notice pleading do not require Dunesland to do more at this stage of the litigation other than allege that the individual defendants instructed the superintendent of the Park to deny Dunesland the right to display its pamphlet at the Park. See Kolupa v. Roselle Park Dist., 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits . . . that will let the defendant investigate. . . . Details come later, usually after discovery."). Dunesland has sufficiently alleged involvement by each individual defendant, so it would be inappropriate to dismiss any of them from the lawsuit at this time.

V.

For the above reasons, I grant defendants' motion to dismiss in part, and deny it in part. I grant defendants' motion to dismiss the IDNR from this suit, and dismiss those claims for damages and declaratory judgment against the individual defendants in their official capacities. I deny the remainder of defendants' motion.

**ENTER ORDER:**

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: November 13, 2006