IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS DUNESLAND PRESERVATION SOCIETY, an Illinois Corporation | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 06 C 2880 |
| THE ILLINOIS DEPARTMENT OF NATURAL RESOURCES, et al., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In May of 2006, the Illinois Dunesland Preservation Society ("Dunesland") filed a complaint against the Illinois Department of Natural Resources ("IDNR") and a number of individuals, claiming that they violated Dunesland's First and Fourteenth Amendment rights by refusing to display, in display racks located in certain areas of Illinois Beach State Park (the "Park"), an informational pamphlet Dunesland prepared on how to avoid asbestos exposure at the Park. Plaintiff's four-count complaint seeks a declaratory judgment (Count I); injunctive relief (Counts II and III);[1] and monetary damages pursuant to 42 U.S.C. § 1983 (Count IV).

In August of 2006, Defendants moved to dismiss plaintiff's complaint under Fed. R. Civ. P. 12(b)(6) on the grounds that 1)

---

[1] The same relief--an injunction compelling defendants to display Dunesland's pamphlet--is requested in Counts II and III, but plaintiff asserts the First Amendment in Count II and the Fourteenth Amendment in Count III.

plaintiff has no First Amendment right to require the IDNR to display Dunesland's pamphlet in the Park's display racks; 2) both IDNR and its agents are immune from § 1983 liability under the doctrine of sovereign immunity; and 3)plaintiff failed to allege that certain of the individual defendants were sufficiently involved in the alleged constitutional violations to support a § 1983 action. I granted defendants' motion in part, dismissing IDNR from the case and dismissing plaintiff's claims for damages and declaratory relief against the individual defendants in their official capacities. I denied the remainder of defendants' 12(b)(6) motion.

Before me now are cross-motions for summary judgment. Plaintiff seeks partial summary judgment on counts II-IV of its complaint, while defendants seek summary judgment on all counts. For the reasons explained below, plaintiff's motion is denied and defendants' motion is granted.

I.

Illinois Beach State Park is the most visited state park in Illinois. It is located in Lake County, bordering Lake Michigan on property owned by the State of Illinois. IDNR is the state agency responsible for operating the Park. At several locations throughout the Park, including locations referred to as the Park Office, the Gate House, the Interpretive Center (or Nature Center), the Marina, and the Lodge, IDNR makes available to visitors a

variety of informational materials, which are displayed in and around racks or stands designed for this purpose.[2] These materials typically include visitor guides and maps; pamphlets about other Illinois State Parks; brochures describing local attractions and recreational activities; and health and safety information.

At times relevant to this action, Robert Grosso, who was the Park's Site Superintendent, and Julie Brewer, who worked in the Park Office, were generally responsible for populating the display racks with information they deemed of interest to Park visitors. Some of the information they selected came in the mail from the Illinois Department of Public Health, the Lake County Health Department, and the United States Department of Agriculture. Brewer obtained other literature by visiting sources outside the Park, such as the Lake County Convention Bureau.

IDNR did not have established policies or guidelines for selecting materials to include in Park displays. Grosso and Brewer used their discretion and common sense to select information they thought was appropriate and useful to Park visitors. Brewer testified that Grosso had the "ultimate decision" about which materials were displayed. She further stated that material "about

---

[2]Wall-mounted plastic display racks were used at the Park Office. The manner in which informational materials were displayed evidently varied slightly among the display areas identified in the complaint. These minor differences are immaterial to the resolution of plaintiff's claims, and references in this opinion to "racks" or "display racks" are intended to encompass all such variations.

the state park and about the general areas, special events" was generally acceptable, but not "garage sales, personal type things." In August of 2004, the Park displays contained, for example, information relating to: a local amusement park; a nearby shopping center; a Lake County recreation guide; train schedules to Chicago; an Illinois Department of Health pamphlet on E-coli; a Lake County Health Department flyer on Nile Virus; and a United States Department of Agriculture Pest Alert on the Emerald Ash Borer, among other materials.

Dunesland is an Illinois non-profit organization, incorporated in 1950, whose early members were instrumental in establishing the Park. Dunesland has supported and contributed to the Park since its inception, for example by developing educational programs for use at the Park's Interpretive Center and by producing texts describing the flora and fauna found in the Park. Over the years, IDNR has generally included these texts, as well as Dunesland's newsletters and membership applications among the informational materials on display for visitors.

In March of 2000, the Illinois Department of Public Health, the Illinois Environmental Protection Agency, and IDNR jointly developed a fact sheet to communicate information about the presence of asbestos containing material at the Park. From 2000 through some time before August 2004, this fact sheet was displayed at the locations identified in the complaint and at kiosks

4

throughout the Park. At some point, however, the supply of these asbestos fact sheets ran out, and they were no longer displayed at the Park by August of 2004.

Dunesland created its own pamphlet (or flyer) with information on how to avoid asbestos exposure at the Park. On August 31, 2004, Dunesland sent a request to Robert Grosso that "IDNR display the public service flyers relating to asbestos and protecting the health and safety of the public." Specifically, Dunesland sought "to have IDNR display these handout flyers in the same areas where other informational and cautionary flyers and brochures are displayed." Grosso sent a fax to defendants Ascardis, Hickmann, Mayville, and Furr for guidance on Dunesland's request.

Hickmann, Furr, Yonkauski, and Mayville considered Dunesland's request, then instructed Grosso to inform Dunesland that IDNR would not display Dunesland's asbestos pamphlet in the requested display areas. Dunesland did not seek to distribute its flyer within the Park by any means other than inclusion in the display racks. No special permit or license is required to hand out pamphlets to Park visitors.

II.

Summary judgment is proper when the record reflects that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp., v. Catrett*, 477 U.S. 317, 322 (1986). The moving

5

party bears the initial burden of identifying undisputed facts in the record that it believes demonstrate the absence of a genuine dispute. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006). If the movant meets this burden, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* (*quoting Vitug v. Multistate Tax Comm'n*, 88 F.3d, 506, 512 (7th Cir. 1996)).

In evaluating the parties' respective positions, I must consider the record as a whole and draw all reasonable inferences in favor of the party opposing summary judgment. *Fisher v. Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992). Nevertheless, a mere "scintilla of evidence" favoring the non-movant is insufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the record "could not lead a rational trier of fact to find for the non-moving party," the non-movant has failed to demonstrate that a genuine factual dispute exists. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Local Rule ("L.R.") 56.1, which requires certain filings in support of and in opposition to summary judgment motions, was adopted to assist district courts in sorting out which facts, if any, are genuinely in dispute. *Portis v. City of Chicago*, 510 F.Supp. 461, 463 (N.D. Ill., 2008). Specifically, L.R. 56.1(a)(3) requires that the moving party provide a statement of material

facts that it contends are undisputed and entitle it to judgment in its favor. *Id.* The opposing party must provide a concise response admitting or denying each of the movant's statements, and in the case of any disagreement, must cite to specific facts in the record that it contends demonstrate a genuine dispute. *Id.*; L.R. 56.1(b)(3). The non-movant may also include a statement of additional facts and supporting citations, in separate numbered paragraphs, that it contends defeat summary judgment. *Portis*, at 463; L.R. 56.1(b)(3).

Plaintiff's L.R. 56.1 submissions defy both the letter and the spirit of the Rule. In 334 statements of fact (many of which contain multiple assertions and/or state facts with no apparent relevance to the issues presented), and eighty-two pages of meandering and argumentative responses to defendants' nine page submission, plaintiff effectively obfuscates, rather than clarifies, any genuine factual disputes.

I am entitled to demand strict adherence to L.R. 56.1, and I may refuse to consider assertions presented in a manner that does not comport with the rule. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Indeed, I may deem admitted any fact not properly disputed in the manner provided by the Rule. *Tulley v. Tharaldson Enterprises, Inc.*, No. 99 C 50238, 2001 WL 1002406, at *1 (N.D. Ill. 2001 August 29, 2001)(*citing Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000)).

7

Nevertheless, it is apparent from my review of the parties' briefs and authorities cited that resolution of these cross-motions rests upon legal questions that can be resolved with reference to relatively few facts.[3] Accordingly, I have considered plaintiff's L.R. 56.1 submissions, regardless of their impropriety, to the extent necessary for an understanding of the narrow factual landscape. The narrative in the previous section reflects the material facts as to which I find there is no genuine dispute.

### III.

Plaintiff does not dispute that if the literature displayed in the Park display racks constitutes government speech, it has no right to have its flyer in the displays. "It is well established that when the government speaks, 'it is entitled to say what it wishes.'" *Choose Life Illinois, Inc., v. White*,---F.3d---, 2008 WL 4821759, at *5 (7th Cir. 2008)(*quoting Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 833 (1995) and *citing cases*). Indeed, if the messages conveyed in the display racks are the government's own, no private speech rights are implicated by its choice of content. *Choose Life*, at *5. To prevail at summary judgment based on the theory that the display racks constitute government speech, defendants must first establish facts that

---

[3] Because the same factual and legal issues govern the parties' cross-motions, and because the movant bears a higher burden than the non-movant on summary judgment, I focus my discussion on the grounds for granting defendants' motion. Largely the same analysis explains, *a fortiori*, the basis on which I deny plaintiff's motion.

support that legal conclusion. Even if they meet this initial burden, however, they are entitled to summary judgment only if plaintiff cannot either controvert defendants' facts with specific evidence in the record, or establish additional facts to support a contrary legal conclusion.

Defendants also argue that the Supreme Court's "speech forum" doctrine is inapplicable to this case regardless of whether the display racks are purely government speech. To prevail based on this theory, defendants must establish (again based on uncontroverted facts) that the IDNR's exercise of discretion in deciding what private speech to make available in the Park's display racks is inappropriate for analysis based on public forum principles. *See U.S. v. American Library Ass'n, Inc.*, 539 U.S. 194, 205 (2003). Assuming defendants meet this burden, plaintiffs may still survive summary judgment by controverting defendants' factual assertions with specific record evidence, or by identifying additional facts that support the application of the speech forum doctrine. As to the latter burden, plaintiff must present sufficient evidence from which to conclude that the display racks are either a "traditional" or a "designated" public forum, or that they are a nonpublic forum from which plaintiff was unreasonably excluded.[4] *See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,

---

[4]Although defendants contend that speech forum principles are inapplicable, they argue in the alternative that these principles support a judgment in their favor. Because I agree that speech

473 U.S. 788, 802 (1985).

The exact contours of the "government speech" doctrine are a bit nebulous and appear to be in a state of flux at present. *See Pleasant Grove City, Utah v. Summum*, 128 S.Ct. 1737 (2008) (granting writ of certiorari).[5] For example, the Court of Appeals for the District of Columbia noted, in *People for the Ethical Treatment of Animals v. Gittens*, 414 F.3d 23, 28 (D.C.Cir. 2005)("*PETA*"), that a compilation of third-party speech is itself a "communicative act" (*citing Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674), then held that such an act by the government, at least in the context of public libraries and government-sponsored art exhibits, constitutes government speech. ("Those who check out a Tolstoy or Dickens novel would not suppose that they will be reading a government message. But in the case of a public library, as in the case of the Party Animals exhibit, there is still government speech.") Yet, most of the cases on which the *PETA* court relied held the forum analysis inapplicable *without* explicit reference to the government speech doctrine.

---

forum principles are inapplicable, I need not discuss defendants' alternative argument at length.

[5]One of the issues the Supreme Court has been asked to decide in *Pleasant Grove* is whether a "compendium of private speech" displayed on government property constitutes government speech. Though monuments--not flyers--are at issue in *Pleasant Grove*, it is possible that the Court's analysis will affect whether the contents of the display racks in this case can be considered government speech.

In the context of this case, I find it unnecessary (as well as imprudent, in light of the pending *Pleasant Grove* case), to decide whether the "compilation of the speech of third parties" in the display racks amounts to purely government speech. Instead, I rely on the analyses discussed in *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802)(describing types of forums), and *U.S. v. American Library Ass'n* 539 U.S. 194, 206 (2003)(holding forum analysis inapplicable to public libraries' provision of Internet services), and conclude that forum analysis is inapplicable to the Park's display racks.

In *Cornelius*, the Court explained that a forum is defined with reference to the access sought by the speaker. *Cornelius*, at 801. The *Cornelius* court held that "the government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse." *Cornelius*, at 802. The Court continued, "not every instrumentality used for communication...is a traditional public forum or a public forum by designation." *Id.*, at 803.

In *American Library Association*, the Court revisited these principles in upholding the constitutionality of a statute that requires public libraries to use Internet filters as a condition to receiving federal subsidies. Speaking for a plurality of the Court, Chief Justice Rehnquist explained,

> A public library does not acquire Internet terminals in order to create a public forum for web publishers to express

> themselves, any more than it collects books in order to provide a public forum for the authors of books to speak. It provides Internet access, not to "encourage a diversity of views from private speakers," but for the same reasons it offers other library resources: to facilitate research, learning, and recreational pursuits by furnishing materials of requisite and appropriate quality.

*American Library Ass'n, Inc.*, at 206 (plurality opinion)(*distinguishing Rosenberger*, 515 U.S. at 834). Likening public libraries to public broadcasters, as in *Forbes*, and to funders of the arts, as in *National Endowment for Arts v. Finley*, 524 U.S. 569, 585-586 (1998), the plurality concluded that forum analysis was incompatible with the libraries' fundamental mission of "furnishing materials of requisite and appropriate quality" to the public, which required them to exercise broad discretion. 539 U.S. at 206.

In this case, the uncontested facts establish, first, that plaintiff sought only to display its flyers in the display racks, not to hand them out or otherwise to distribute them anywhere within the Park. Accordingly, my inquiry is whether forum analysis is applicable to the display racks specifically, not to the Park generally.[6] *See Cornelius*, at 801. I conclude based on *Cornelius* and *American Library Association* that it is not.

---

[6]The Park is unquestionably a "traditional" public forum, *Hague v. Committee for Indus. Organization*, 307 U.S. 496, 515 (1939), while the display racks, just as unquestionably, are not. Park display racks are not among the places that have "immemorially been held in trust for the use of the public and, time out of mind...used for purposes of assembly, communication of thoughts between citizens, and discussing public questions." *Id*. And, as the Supreme Court has cautioned, "the doctrines surrounding traditional public forums may not be extended to situations where such history is lacking." *American Library Ass'n*, at 206.

12

The parties agree that IDNR lacked a formal policy or guidelines for determining which materials would be included in the display racks.[7] The display racks contained a combination of solicited and unsolicited materials, and the primary selection criteria were whether the information would "assist visitors and give them information about other ways to spend their time in the area," would not be "inconsistent with any other message [IDNR] was trying to express," and, in the case of public health advisories, would provide information visitors "would need to know about."

These facts demonstrate that IDNR's intent in creating and maintaining the display racks was not to "create a public forum for [private speakers] to express themselves," *American Library Ass'n*, at 206, but rather to facilitate the recreational pursuits of visitors to the park. *Id*. Creating an "instrumentality used for communication" is not tantamount to opening a public forum. *Cornelius*, 473 U.S. at 803.

Plaintiff has not identified any evidence from which to conclude that IDNR affirmatively decided to use the display racks

---

[7]Presumably to buoy their argument that the display racks are government speech, defendants deny several of plaintiff's factual statements on this issue on the ground that they are not supported by the citations. *See, e.g.*, Docket No. 165, answers to ¶¶ 105-106, 110. These denials are disingenuous; the assertions are clearly supported by the record, sometimes restating witness testimony verbatim. Moreover, defendants' citations do not controvert plaintiff's on this issue. Nevertheless, under my analysis, these citations ultimately support defendants' case, not plaintiff's because "the government does not create a public forum by inaction." *Cornelius*, at 802.

as a forum for public debate or discourse. Rather, uncontroverted evidence shows that the IDNR intended to designate certain well-trafficked areas of Park property as centers for providing useful information to Park visitors.[8] In essence, IDNR created a mini-library of resources for the public, and it necessarily made "editorial" judgments about which materials to include. As the *American Library Association* plurality concluded, "public forum principles...are out of place" in this type of context. 539 U.S. at 205. IDNR had broad discretion to select materials that would

---

[8]Plaintiff is correct that the inquiry into intent "is not merely a matter of deference to a stated purpose." *Air Line Pilots Ass'n Intern. v. Department of Avation of the City of Chicago*, 45 F.3d 1144, (7th Cir. 1995). Plaintiff relies heavily on *Air Line Pilots*, emphasizing the Seventh Circuit's requirement that two factors be considered to ascertain intent: 1) the government's policy and practice, and 2) the nature of the property and its compatibility with expressive activity. *Id.*, *citing Cornelius*, 473 U.S. at 802-03. Consideration of these factors does not save plaintiff from summary judgment in this case. Although IDPH lacked formal policies governing the selection of material for display, it is undisputed that in practice, Brewer and/or Grosso excluded materials they considered inappropriate. This distinguishes the instant case from *Planned Parenthood Ass'n v. Chicago Transit Authority*, 767 F.2d 1225 (7th Cir. 1985), in which the government had a general policy of open access for "almost anyone willing to pay," as explained by the *Air Line Pilots* court. 45 F.3d at 1153. Nor is the nature of the displays compatible with unbridled access for any and all expressive activity; surely visitors cannot be expected to forage through an infinite range of literature in hopes of finding, for example, a map of the Park. Plaintiff's reliance on *Air Line Pilots* is unavailing for the additional reason that the judgment in that case reversed a motion to dismiss, not a motion for summary judgment. The Seventh Circuit has often described summary judgment as the "put up or shut up moment in a lawsuit," *see, e.g., Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008), and plaintiff has offered no meaningful evidence to suggest that the government's policy was anything other than the one asserted: to assist Park visitors by providing useful information.

"facilitate...recreational pursuits by furnishing materials of requisite and appropriate quality." *Id*. at 206. That is what the record shows it did, and plaintiff has no First Amendment right to injunctive relief.[9]

In the absence of a First Amendment right to display its flyer in the racks, plaintiff's Fourteenth Amendment claim founders. As plaintiff acknowledges, where no interference with fundamental rights is at issue, a challenged government action need only survive "rational-basis scrutiny." *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1001 (*quoting Locke v. Davey*, 540 U.S. 712, 721 n. 3 (2004)). Under this standard, plaintiff must demonstrate "malicious conduct" on the part of government officials that is unrelated to any legitimate state objective. *Vision Church*, at 1001. Plaintiff falls far short of the mark. In fact, other than the conclusory statements that IDNR's actions "cannot

---

[9]My factual finding that the government did not intend to designate a public forum means that even if public forum principles applied, the display racks could only be considered a nonpublic forum. In nonpublic forums, restrictions on speech need only be reasonable and may not discriminate on the basis of viewpoint. *Air Line Pilots*, 45 F.3d at 1151 (*citing Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983)). Even assuming that the exclusion of plaintiff's flyer was viewpoint based (though this is far from clear), I find that because 1) Dunesland was not prohibited from distributing its flyer within the Park by means other than inclusion in the displays, and 2) the IDNR has a legitimate interest in limiting the materials in the displays to those it considers appropriate and useful to visitors, any restriction on plaintiff's expressive activities was consistent with the First Amendment. *See Cornelius*, 473 U.S. 788 at 809 (restriction on access to nonpublic forum need not be narrowly tailored, nor must government interest be compelling).

withstand either level of scrutiny" and that no legitimate state interest is at issue, plaintiff makes no serious argument that IDNR's refusal to display Dunesland's flyer reflects an irrational or malicious intent.

Of course, with the fall of plaintiff's constitutional claims comes the demise of its § 1983 claim, as liability under § 1983 is premised upon a constitutional violation.

IV.

For the foregoing reasons, Dunesland's motion for partial summary judgment is denied and defendants' motion for summary judgment is granted.

**ENTER ORDER:**

_____
Elaine E. Bucklo
United States District Judge

Dated: November 25, 2008